# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America<br>-Plaintiff- | <u>Case: 19-CV-5549 (GBD)</u> |
| v. | |
| Carolyn Buff<br>-Defendant- *Pro Se* | |

## MOTION FOR RECONSIDERATION PURSUANT TO FRCP 60

### AFFIRMATION/DECLARATION

I, Carolyn Buff, Defendant in this case, humbly submit the following, under penalty of perjury under the Laws of the United States of America.

### A. INTRODUCTION

1. I request that the Court reconsider its Memorandum Decision and Order, Court Document 56 (Decision), pursuant to Rule 60 of the Federal Rules of Civil Procedure, based on: i) errors of law, ii) errors of fact, and iii) evidence that was not previously available.

2. Apart from the new evidence, <u>all</u> of the following arguments and facts were presented in the pleadings before Judge Fox.

1

### B. ERRORS OF LAW

3. In its Decision, the Court refers to FRCP 4 (e).[1] This rule is inapposite as it refers to service on an "Individual Within a Judicial District of the United States." I am not, and was not, within a judicial district of the United States; I am, and was, living abroad during the relevant period. Therefore, the relevant rule if FRCP 4 (f).

4. If FRCP 4 is inapposite, so is the Court's reliance on New York State law regarding service on doormen.[2]

5. Even, arguendo, that New York law were relevant, the Process Server's affidavit is inadmissible because it relies on the purported statements of an unnamed doorman and anonymous hearsay in an affidavit is inadmissible. "In deciding the motion, the court 'may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits.'" (emph. added) *International Diamond Importers, Inc. v. Oriental Gemco (N.Y), Inc.*, 64 F Supp. 3d 494, 506 (S. D.N.Y 2014) [emphasis added, citing *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d, 863,865 (2d Cir.1996); *Arbaugh v. Y & H Corp.*, 546 US 500, 501, 126 S.Ct 1235, 163 L. Ed.2d 1097 (2006); *Jordan v. Verizon Corp.*, 391 Fed. Appx. 10, 12 (2d Cir.2010) (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir.2003); *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 701 F.Supp.2d 568, 580-81 (S.D.N.Y.2010) (alteration in original) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir.2004).

6. Why is this consistent body of case law sensible? Because I cannot go back to the anonymous doorman who made the purported statements to the process server to confirm

---

[1] Decision, ppp. 5-6.
[2] Decision, p. 6.

what he allegedly told the process server, ask whether he might have mixed me up with my father's wife, otherwise understand why he might have said something that was untrue, or potentially obtain a clarifying affidavit from him.

### Conclusion on this point of of law

7. In its Decision, the Court correctly observes that the burden is on the Government to demonstrate proper service.[3] Without the process server's affidavit referring to anonymous hearsay, it has no such evidence.

### Additional comment on FRCP 4(f)

8. Finally, although it is not relevant in this case because I did not have access to the 340 Riverside Drive apartment at which I was purportedly served during the period at issue, I would make the following observation regarding FRCP 4 (f) on behalf of the 9 million US citizens who live abroad.[4]

9. Citing *National Development Company v. Triad Holding Corp* (Decision, p. 6), the Court states that "it is unrealistic to interpret [FRCP Rule 4] so that the person to be served has only one dwelling place or usual place of abode." It is notable that the defendant in that case was Adnan Khashoggi, one of the richest men in the world, and an individual with multiple residences in multiple countries. The defendant in *United States v. Mellon* (Decision, p. 6) also appears to have been, if not equally wealthy, at least unusually wealthy with multiple homes.

10. By transposing the *obiter* in those cases to the circumstances in this case, the Court has effectively concluded that my biannual visits to my father in the United States rendered my

---

[3] Decision, p. 7.
[4] https://www.cnbc.com/2021/05/18/the-top-reason-why-americans-abroad-want-to-dump-their-citizenship.html

father's address a "usual place of abode." In doing so, the Court is essentially re-writing Federal Rule of Civil Procedure 4 (f) so that it only applies to US citizens living abroad who never visit the United States regardless of whether they are covered by the "330 day abroad" foreign earned income tax exclusion. If that is what this Court intends then it should say so explicitly so that higher courts and Congress may weigh in.

## C. ERRORS OF FACT

### The Government's purported facts

11. In in its Decision, the Court relies on the Government's factually incorrect indicia of permanence tying me to the 340 Riverside Dr. address,[5] all of which I have rebutted in prior pleadings.

12. The Court fails to mention that 340 Riverside Dr. was my late parents' home and that ownership is in their names. Also relevant is that at the time of alleged service, I was a 57 year old single parent with a minor child working for the United Nations abroad. Finally, arguendo that my short biannual visits to the apartment in Manhattan constituted some form of "indicia of permanence," which I believe they do not, my father's second wife barred my access to the apartment following my father's death on July 4, 2018. My last visit to the apartment was during my father's final illness from June 1st to 8th 2018, or over a year before the date of service at issue in this case.

---

[5] Decision, pp. 7-8.

13. I am not like James Ross Mellon who appears to have had abodes in both New York and abroad.[6] I am perhaps not even like the Honourable judge in this case who may have been able to maintain a residence in New York while working in Tanzania and Liberia.[7]

14. In its Decision the Court found that Mr. Mendelsohn, my former accountant, responded on my behalf to IRS documentation sent to the Riverside Drive address. This is incorrect; he responded on my behalf because he had a power of attorney over my tax issues from 2010-2018 and was therefore copied on all correspondence from the IRS to me.

15. The Court relies on the affidavit of IRS official, Stephanie Tse, stating that Mr. Mendelsohn told her that the Riverside Drive apartment belonged to me. A review of the affidavit indicates that Ms. Tse never stated that the apartment belonged to me. As for Mr. Mendelsohn, he is close to 90 years old and never used the Riverside Drive address on my tax returns. He used that address for my father's tax returns which he also prepared.

16. The Court reiterates the Government's submission that I received bank statements at that address. In prior submissions to the Court, I noted that the relevant deposition was taken in 2012 and that I rely on online bank statements not paper statements. Thus, where the statements were sent only indicates that I was often working in countries where mail delivery was difficult.

IRS official Stephanie Tse affidavit

17. The Court and Government rely extensively on a December 2021 affidavit submitted by IRS official Stephanie Tse referring to a July 2016 discussion she had with my former accountant Harvey Mendelsohn.

---

[6] Decision, p. 6 citing United States v. Mellon, 719 Fed. 2d cir 2018.
[7] https://www.pli.edu/faculty/hon.-george-b.-daniels-6863

18. This discussion took place over three years before the service at issue and therefore has no probative value. I, nonetheless, make the following observations in the interests of comprehensiveness.

19. With respect to the content of the affidavit, Ms. Tse claims that "...Ms. Buff... remained actively involved in the investigation." This is not true and Ms. Tse provided no support for this allegation, although the Freedom of Information (FOIA) disclosure I received in August 2021 reveals that contemporaneous IRS records exist.

20. More importantly, in para. 15, she states that on July 11, 2016 "the [unnamed] Revenue Agent asked Mr. Mendelsohn to provide Ms. Buff's last known address; Mr. Mendelsohn stated that he had used the address for the apartment used by Ms. Buff's father...and that he assumed that was her last known address." This constitutes anonymous hearsay in an affidavit which the court may not rely on.

21. Further, Ms. Tse does not mention that all my tax returns for the relevant years showed foreign addresses and that in each year I benefited from the foreign earned income tax exclusion, meaning that I lived abroad a minimum of 330 days a year, all information that was available to her.

22. In conclusion, on Ms. Tse's affidavit, Ms. Tse refers to anonymous hearsay regarding the alleged July 11, 2016 discussion with Mr. Mendelsohn. She never stated that the apartment belonged to me, and she omitted considerable relevant information in her affidavit that would have cast doubt on the quality of her own conclusions.

**Error of facts- my evidence**

23. The Court did not address any of the evidence I submitted in this case, thereby leaving the impression that the only "evidence" I adduced was an improperly sworn submission stating that I was "surprised" by the process server's purported conversation with the 340 Riverside Drive doorman, and that I did not refer to "specific facts."[8]

24. The Court fails to take into account my repeated sworn submissions that I have lived and worked abroad since 1994 with the exception of nine months in 2015. It fails to take into account the tax returns I submitted showing foreign addresses. It fails to consider my submissions that I have always relied on the foreign income tax exclusion based on residence abroad, a fact that the Government has not rebutted. It fails to discuss the 2012 deposition in which I set out in detail my work and living arrangements abroad. It fails to mention the email from my cousin, James Milstein, dated July 31, 2018, the co-executor of my father's estate, stating that following my father's death his second wife had exclusive occupancy rights to the 340 Riverside Drive apartment and would not allow me access. It fails to note the evidence showing that in July and August 2018-when I was allegedly properly served in New York, I was living in France. All of this was presented to Judge Fox and again to this Court (see for example, Court Documents 40 and 55-1).

**Additional evidence that was not available at the time of original pleadings**

25. As set out above, the burden is on the Government to prove proper service. New York State law is inapplicable. The process server's affidavit is inadmissible. Ms. Tse's affidavit refers

---

[8] Decision, p. 8.

to conversations with my elderly accountant over three years before the service at issue and therefore has no probative value. Even if it did, it is ridden with errors.

26. In addition, I provided evidence supporting my claims that since 1994, 340 Riverside Dr. could not be considered my "usual place of abode," and that I did not have access to the apartment following my father's death on July 4, 2018 or over a year before the service at issue. It is, therefore, my view that no further evidence is required in this case.

27. However, in the interests of completeness, I am providing additional evidence that was not available at the time of the initial pleadings in this case. In late 2020, my computer was stolen, meaning that I lost a number of documents, including my son's school records, my Geneva, Switzerland housing contract, a copy of a letter I wrote to the Coop Board of the apartment at 340 Riverside Drive complaining about my lack of access to the apartment, and a copy of a submission to the Dutchess County Surrogate's Court complaining of the same. It has taken some time to retrieve these documents.

28. My employment contracts were on United Nations computers which I no longer have access to since I am no longer working there. To obtain these contracts from the bowels of the United Nations would take considerable additional time.

29. Moreover, I deposed my former accountant, Harvey Mendelsohn, in a separate proceeding on October 1, 2021. In that deposition, he affirmed that the 340 Riverside Drive apartment belonged to my father, that he sent my father's tax information there, and that he had no reason to believe I was living and working in the United States. Unfortunately, I will not receive the transcript of this deposition for another two weeks, the deadlines for appeal are running, and I would like to avoid appeal on this matter.

**List of exhibits with description of probative value and explanation of new evidence**

<u>Exhibits previously submitted in these proceedings</u>

- Annex A: extracts of my 2012 deposition setting out my work and residence abroad.

- Annex B: Airbnb reservation for France for July and August of 2019, at the time of alleged service on me at 340 Riverside Drive in New York.

- Annex C: An email from my cousin and co-executor of my father's estate, dated August 1, 2018 telling me that my father's wife would not allow me to stay in the apartment.

- Annex D: an email, dated September 14, 2017 putting an end to my relationship with my former accountant Harvey Mendelsohn on the basis of poor communication.

- Annex E: tax return front pages showing my foreign addresses for 2016-2019.

<u>New information unavailable at the time of earlier proceedings in this matter</u>

- Annex F: A rental contract for my Geneva, Switzerland housing from 2018-2020. As I lost my computer, I had to retrieve the contract from my former landlord.

- Annex G: my son, Martin Buff's, Swiss school report for 2018-2019 school year. I am a single parent and the school is a day school. As I lost my computer, I had to retrieve the contract from my son's former school.

- Annex H: Martin Buff's, Swiss school report for 2019-2020 school year. Martin attended the day school. As I lost my computer, I had to retrieve the contract from my son's former school.

9

- Annex I-An affidavit from Beverly Schreiber Jacoby describing my movements in 2018-2019 and my inability to access the 340 Riverside Drive apartment following my father's death on July 4, 2018.

- Annex J-a letter to the 340 Riverside Dr. Coop Board, dated December 15, 2018, that I shared with Ms. Jacoby regarding my access to the apartment. As I lost my computer, I no longer had a copy of the letter, however, several weeks ago, Ms. Jacoby found the copy I shared with her at the time as she recommended that I write to the board.

- Annex K- an email to me, dated December 20, 2018, from the 340 Riverside Dr. Coop Board President in response to my letter to her.

- Annex L-extracts from a July 2020 petition I submitted to the Dutchess County Surrogate's Court in which, *inter alia*, I complained about my lack of access to the 340 Riverside Dr. apartment since my father's death.

### D. OVERALL CONCLUSION

30. For the foregoing reasons, I ask that the Court reconsider its Decision denying my Motion to dismiss the case against me pursuant to FRCP 12 (b) (5).

I swear under penalty of perjury under the Laws of the United States of America that the foregoing is true.

Carolyn Buff
48 Rue de Geneve
01210 Ferney-Voltaire
France
carolynjbuff@yahoo.com
Tel: +33 7 84 59 90 40

*[Notary seal: Marc Parizot, NOTAIRE, Famille Parizot 1898, Geneve, CH]*