**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
UNITED STATES OF AMERICA,

                             Plaintiff,                      **<u>ORDER</u>**

           -against-                     **19-CV-5549 (GBD) (JW)**

CAROLYN BUFF,

                           Defendant.
----------------------------------------------------------------X
**JENNIFER E. WILLIS, United States Magistrate Judge:**

       Before the Court is a Motion to Compel Defendant to sit for her deposition. Dkt. No. 104. This long-sought-after deposition has been the subject of on-going motion practice for several months, the history of which is laid out below. At its core, however, the dispute centers around the applicability of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters of 1970 ("Hague Convention") to this matter. For the reasons set forth in this decision, Plaintiff's motion to compel is GRANTED. Defendant's motion to seal, Dkt. No. 111, also addressed below, is DENIED.

## <u>BACKGROUND</u>

       This case was initiated by the United States of America ("Plaintiff") on June 13, 2019. Complaint, Dkt. No. 1 ("Compl."). Plaintiff alleges that Carolyn Buff ("Defendant") failed to report her financial interest in certain foreign bank accounts in the years 2006, 2007, and 2008, in violation of the Bank Secrecy Act, 31 U.S.C. § 5311 *et seq*. <u>Id</u>. at 1. Plaintiff seeks unpaid civil penalties as well as amounts that have accrued since the date of assessment. <u>Id</u>. At the time of the filing of the

Complaint, Plaintiff sought $64,292.06 in penalties, plus interest and additional penalties that could accrue until the date of payment.  Id. at 12.

## A. **Procedural History**

Initially, Defendant did not appear in this case and Plaintiff sought a default. See Dkt. Nos. 13, 15.  On June 22, 2020, Defendant appeared stating that she had not lived in the United States since 1993 and as such had not received service of the documents and only then become aware of the pending litigation.  Dkt. No. 16.

On December 14, 2020, Defendant filed a motion to dismiss, or in the alternative a motion for summary judgment.  Dkt. No. 29.  Defendant sought dismissal under the theory that the Complaint was improperly served upon her, as Plaintiff had not followed the Federal Rules for service on a defendant abroad.  Id. at 3.  The motion to dismiss was recommended for denial by Magistrate Judge Fox on May 4, 2021, Dkt. No. 45, and adopted by District Judge Daniels over Defendant's objections on September 13, 2021.  Dkt. No. 56.  On November 8, 2021, Defendant filed an appeal of the dismissal with the Second Circuit.  Dkt. No. 73.  The appeal was dismissed on April 28, 2022.  Dkt. No. 80.

## B. **The Discovery Process**

On October 8, 2021, the Parties filed their Rule 26(f) Discovery Plan Report. Dkt. No. 67.  In it the Parties noted that "Defendant is not willing to provide discovery voluntarily and thus Plaintiff will need to seek Party discovery under Chapter 1 of the Hague Evidence Convention."  Id.  Both Parties signed the Report, and it was submitted jointly.  Id.

Magistrate Judge Fox held an initial case management conference with the Parties on October 12, 2021, at which the deadline for fact discovery was set as October 12, 2022.  Dkt. No. 68.  Both Parties have stated in recent filings that Judge Fox set this lengthy discovery period specifically to allow time for discovery to proceed through the often-slow mechanisms of the Hague Convention. Dkt. No. 74 at 2; Dkt. No. 96 at 3-4.

At the time this case was commenced, Defendant was living in France.  To that effect, on September 20, 2021, Defendant asked the Court to move the initial case management conference to an earlier time because she lived in France.  See, _e.g._, Dkt. No. 58.  Subsequently, on October 12, 2021, the day of the initial case management conference, Defendant informed Plaintiff that she had moved from France to Belgium.  See Ex. B to Dkt. No. 96.  On February 10, 2022, current counsel for Plaintiff emailed Defendant to confirm that she was still based in Belgium.  Id.

The discovery issue at the heart of the current dispute was first raised to the Court on March 16, 2022 via a letter motion filed by Plaintiff.  Dkt. No. 74.  Plaintiff sought to compel Defendant to sit for a deposition.  Id.  Plaintiff noted that Belgium, where Defendant had relocated, was not a signatory to the Hague Convention, and as such sought to compel her to participate in her deposition directly through the power of this Court.  Id. at 2.  On April 26, 2022, the Court held a hearing on the question of compelling Defendant to sit for her deposition while she resided in Belgium.  During that hearing, Defendant reiterated the need to take party discovery from her under Chapter I of the Hague Convention.  See H'ng Tr. at 5:18-25, dated

April 26, 2022 (Dkt. No. 83).  The Court held that, while the Hague Convention could not be utilized in Belgium, Plaintiff still had to go through formal discovery channels if Defendant refused to sit for her deposition voluntarily.  Dkt. No. 83.

On May 6, 2022, Defendant informed the Court that she had relocated back to France.  Dkt. No. 81.

On May 25, 2022, Plaintiff requested another Local Rule 37.2 discovery conference to address Defendant's deposition.  Dkt. No. 88.  On June 15, 2022, the Court set a briefing schedule for Plaintiff's motion to compel.  Dkt. No. 92.  At that time, Plaintiff sought to compel Defendant to sit for her deposition without resorting to the mechanisms of the Hague Convention.  Dkt. Nos. 93-95.  A hearing on the motion was held on June 20, 2022.  The Court found that the Rule 26(f) discovery plan constituted an agreement by both Parties to proceed with discovery via the Hague Convention.  H'ng Tr. at 29:21-30:4; 30:22-23, dated July 20, 2022 (Dkt. No. 101).  Furthermore, the discovery plan as ratified by Judge Fox had specifically contemplated the time needed to comply with the Hague Convention.  Id. at 30:4-7; 30:23-25.  Plaintiff had not taken any steps to comply with the Hague Convention at the time of the conference, even though by that point Defendant had been residing in France for a month and a half.  Id. at 30:7-9; 30:25-31:18.  As a consequence, Plaintiff was ordered to satisfy their obligations under the Hague Convention in order to take Defendant's deposition.  Id. at 32:14-18.

On August 22, 2022, Plaintiff filed a letter with the Court stating that they had followed the procedures mandated by the Hague Convention, except that Plaintiff

was not giving her consent as mandated by the Convention.  On August 25, 2022, the Court held a hearing, and set a briefing schedule to address the question of whether Defendant had consented for purposes of the Hague Convention.  Dkt. No. 105.

## APPLICABLE LAW

### A. The Hague Convention

The Hague Convention is applicable to the taking of depositions in U.S. litigation through Federal Rule of Civil Procedure 28 which states that "[a] deposition may be taken in a foreign country under an applicable treaty or convention."  Fed. R. Civ. P. 28(b)(1)(A).  Discovery under the Convention can be obtained voluntarily or involuntarily.  Voluntary discovery is governed by Article 17 of the Hague Convention, which addresses the taking of evidence without compulsion in a State that is a signatory to the Hague Convention.  See Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970 (as previously defined, "Hague Convention").

France and the United States are both signatories to the Hague Convention. France's assent to the Convention, however, was made with certain reservations, including some on Article 17.  Most pertinent to this discussion, France mandated that "the persons who are to give evidence must receive due notice" stating, among other things, "that appearance for the giving of evidence is voluntary and that non-appearance cannot lead to prosecution in the requesting State" and "that the parties to any action consent to it or, if they do not, their reasons for this."  Reservations of the French Republic to the Hague Convention 5(4)(b)-(c).  After this notice, with the consent of the French Ministry of Justice (the "Ministry"), the collection of evidence,

including a remote deposition, can move forward with the assistance of an appointed commissioner located in France.  See Pl.'s Letter at 2, dated Sept. 2, 2022 (Dkt. No. 109).

Involuntary discovery is governed by Chapter I of the Hague Convention.  The request for discovery is first made to the Ministry, which then determines whether to consider the request.  Pl's Letter at 2, dated Sept. 2, 2022 (Dkt. No. 109).  Following that, the Ministry, if it allows the request, refers the matter to a local court; according to Plaintiff's briefing "it can then take up to nine months for a deposition to be organized."  Id.  Furthermore, Plaintiff notes that the Ministry might reject this particular involuntary discovery request because the matter could be considered administrative, and not within the jurisdiction of "civil or commercial" matters that the Hague Convention addresses.

## B. **The Hague Convention in the U.S. Courts**

The governing case on application of the Hague Convention in U.S. litigation is Aérospatiale, decided by the Supreme Court in 1987.  See generally, Société Nationale Industrielle Aérospatiale v. United States Dist. Court for S. Dist. of Iowa, 482 U.S. 522 (1987).  Notably, the Supreme Court found that the Hague Convention does not "modify the law of any contracting state, require any contracting state to use the Convention procedures, either in requesting evidence or in responding to such requests, or compel any contracting state to change its own evidence-gathering procedures."  Id. at 534.  As the Court noted, the text of the Convention consistently used permissive rather than mandatory language: "The absence of any command that a contracting state must use Convention procedures when they are not needed is

conspicuous." Id. at 535.   The Hague Convention is, as the Court puts it, "a permissive supplement, not a pre-emptive replacement for other means of obtaining evidence located abroad." Id. at 536.   Supporting this interpretation of the Convention, Article 27(b) states that the Convention does not prevent a Contracting State from "permitting, by internal law or practice, any act provided for in this Convention to be performed upon less restrictive conditions." Hague Convention Article 27(b).   Thus, the Supreme Court concluded that "the Hague Convention did not deprive the District Court of the jurisdiction it otherwise possessed to order a foreign national party before it to produce evidence physically located within a signatory nation." Aérospatiale, 482 U.S. at 539-40.   Aérospatiale also directed courts to "take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." Id. at 546.

Since Aérospatiale, U.S. courts have often ordered discovery located abroad without going through the mechanisms of the Hague Convention, including with respect to discovery located in France, regardless of the fact that France has enacted a blocking statute limiting foreign discovery within its jurisdiction.   "The majority of courts that have examined the issue have held that France has little interest in the enforcement of its blocking statute." In re Vivendi Universal, S.A. Secs. Litig., 2006 WL 3378115, at *3 (S.D.N.Y. Nov. 16, 2006) (collecting cases reaching substantially the same result).   While there is the possibility of criminal prosecution in France for violation of its blocking statute, "[a]s held by numerous courts, the French Blocking

Statute does not subject defendants to a realistic risk of prosecution, and cannot be construed as a law intended to universally govern the conduct of litigation within the jurisdiction of a United States court." Bodner v. Paribas, 202 F.R.D. 370, 375 (E.D.N.Y. 2000).

Thus, a potential conflict of laws exists as between U.S. discovery rules and the French blocking statute. The Second Circuit has identified four factors that are used to determine, when there is a conflict of laws in a discovery matter, which legal regime should be followed: "(1) the competing interests of the nations whose laws are in conflict; (2) the hardship of compliance on the party or witness from whom discovery is sought; (3) the importance to the litigation of the information and documents requested; and (4) the good faith of the party resisting discovery." First American Corp. v. Price Waterhouse LLP, 154 F.3d 16, 22 (2d Cir. 1998); see also Vivendi Universal, 2006 WL 3378115, at *2 (using these four factors to determine whether considerations of comity justify resort to the procedures of the Hague Convention).

## **DISCUSSION**

### A. **The Hague Convention does not apply to tax matters**

Surprisingly, at this late stage of the discovery process and the on-going disputes regarding use of the Hague Convention, Plaintiff raises the issue that the France might not even consider tax matters as a "civil or commercial matter" within the jurisdiction of the Convention. See Pl.'s Letter at 2, dated Sept. 2, 2022 (Dkt. No. 109). In support of this understanding, Plaintiff cites to Responses to a Questionnaire that was answered by France in May 2008 regarding certain aspects of the

Convention, as well as letters issued by other civil law countries.  See Pl.'s Letter at 1-2, dated Oct. 7, 2022 (Dkt. No. 118).  Defendant opposes this understanding, noting that what other countries do is not indicative of what France's practices are, and also contending that the Responses are not persuasive.  See Def.'s Letter at 1, dated Oct. 14, 2022 (Dkt. No. 121).

The Court agrees that the submissions demonstrating the practices of Italy, Liechtenstein, and Germany are not persuasive.  However, the Court finds that the Responses to the Questionnaire are a persuasive source.  Documents concerning the Hague Convention are maintained on an internet database run by the Hague Conference on Private International Law.  See The Hague Convention on Private International Law, hcch.net.  The portion of that website dedicated to the Hague Convention with which this Court is concerned collects numerous documents regarding the Convention including "practical information per Contracting Party." See https://www.hcch.net/en/instruments/conventions/specialised-sections/evidence. These include questionnaires that have been sent out to signatory states on four occasions, and the responses submitted by each country to those questionnaires.  The May 2008 questionnaire asked: Please indicate by checking yes or no the areas that the authorities of your State consider to be within the scope of application covered by the expression "in civil and commercial matters."[1]  Responses of France to the May 2008   Questionnaire   related   to   the   Hague   Convention   at   16,

---

[1] The original French reads in full: "Veuillez indiquer (en inscrivant « OUI » ou « NON » dans la case appropriée) les domaines que les autorités de votre État considèrent comme appartenant au champ d'application couvert par l'expression « en matière civile et commerciale » indépendamment du fait qu'un domaine ait ou non déjà fait l'objet de demandes."

https://assets.hcch.net/upload/wop/2008france20.pdf ("Responses").  A list of options follows, with various categories of legal matters checked off.  Notably, one of the options is "fiscalité," or taxation.  The taxation category was not checked.  Id.  Courts have relied on such supporting documents maintained by the hcch.net website as persuasive communication of countries' positions on various multilateral conventions.  See, e.g., Micula v. Gov't of Romania, No. 17-cv-2332, 2018 WL 10196624, at *2 (D.D.C. May 22, 2018) (looking at similar supporting documents in interpretating Romania's stance on the Hague Convention on Service of Process); Lozano v. Alvarez, 697 F.3d 41, 54 n. 14 (2d Cir. 2012) (looking at similar supporting documents in interpreting the United States' interpretation of the Hague Convention on the Civil Aspects of International Child Abduction).  As such, and in the absence of any indications of contrary policy on the part of France, this Court concludes that an issue of tax would not be considered subject to the Hague Convention by the French authorities.

## B. The Aérospatiale comity analysis leans towards compelling Defendant's deposition.

In light of this Court's conclusion that France would not consider this matter subject to the Hague Convention, the question of consent recedes and it becomes necessary to perform the Aérospatiale comity analysis in order to resolve the conflict between U.S. discovery laws and the French blocking statute.

The first factor is "the competing interests of the nations whose laws are in conflict."  First American Corp., 154 F.3d at 22 (citing Minpeco, S.A. v. Conticommodity Services, Inc., 116 F.R.D. 517, 523 (S.D.N.Y. 1987).).  Here, the U.S.

interest is two-fold.  First, there is the U.S. interest in allowing its court system to function by compelling Parties, such as Defendant, to participate in discovery when lawfully subject to suit.  See, *e.g.*, Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co., No. 04-cv-1153 (HB), 2005 WL 3046284, *2 (S.D.N.Y. Nov. 14, 2005) ("The United States has a general interest in ensuring compliance with discovery rules, and in ensuring that plaintiffs have access to discoverable information.").  Second, the Plaintiff in this case is the U.S. government itself, which seeks to vindicate its tax laws by bringing this claim against Defendant.  Plaintiff speaks for the U.S. interest in the simple fact of bringing this suit.  Cf. United States v. Davis, 767 F.2d 1025, 1035 (2d Cir. 1985) (finding that the bringing of a criminal suit by the U.S. government commanded "some deference to the determination by the Executive Branch—the arm of the government charged with primary responsibility for formulating and effectuating foreign policy—that the adverse diplomatic consequences of the discovery request would be outweighed by the benefits of disclosure").  On the other hand, the French interest is minimal.  While the French have stated a resistance to foreign discovery and have enacted their blocking statute, the reality of the matter, as noted above, is that it is almost never enforced.  In particular, as Defendant is a dual citizen of both the United States and France, both countries have some degree of sovereignty over her; this is not a case of a purely French citizen, who never set foot in the United States, being bothered with foreign discovery, in which case one can understand the French interest being much higher.

As such, Court finds that the U.S. interest outweighs the French interest here.  The first factor weighs in favor of compelling Defendant's deposition.

The second factor is "the hardship of compliance on the party or witness from whom discovery is sought." First American Corp., 154 F.3d at 22.  At the hearing held on September 27, 2022, the Court asked Defendant why she was unwilling to be deposed.  H'ng Tr. at 16:7-14, dated Sept. 27, 2022.  Defendant began by raising her ongoing concern with whether she was properly served in this case.  Id. at 16:15-17:9.  The issue of service in this matter has been addressed by Magistrate Judge Fox, District Judge Daniels, and the Second Circuit; all found that service was proper, and thus this does not constitute a hardship.  The Court then asked Defendant directly if "there is any particular hardship that you believe sitting for this… deposition would cause for you?"  H'ng Tr. at 18:18-20, dated Sept. 27, 2022.  Defendant responded saying she did not know where she would get the information to answer depositions properly.  A lack of knowledge is not a hardship.  Plaintiff has agreed to conduct this deposition remotely; Defendant could take this deposition from her own home.  To the extent Defendant is concerned about criminal liability, as noted above there is very little risk of prosecution under the French blocking statute.  Furthermore, she could consent under Article 17 of the Hague Convention and receive the legal coverage she seeks.  Or, if Defendant is in the near future travelling for work to a country that does not have an active blocking statute, Defendant could sit for her deposition from that alternative location.  There is no real hardship to Defendant.  As such, the second factor weighs in favor of compelling Defendant's deposition.

The third factor is "the importance to the litigation of the information and documents requested." First American Corp., 154 F.3d at 22. This factor is perhaps the least persuasive in the argument for compelling Defendant's deposition. Plaintiff has made clear that they seek Defendant's deposition or the sole purpose of establishing what defenses she intends to raise on summary judgment, if not at trial. While convenient, this is not crucial to Plaintiff's prosecution of their case. However, Federal Rule of Civil Procedure 30 states that "[a] party may, by oral questions, depose any person, including a party." Fed. R. Civ. P. 30(a)(1). Plaintiff is entitled to take the deposition of the opposing party. While more lightly than for the other factors, this third factor also weighs in favor of compelling Defendant's deposition.

The fourth and final factor is "the good faith of the party resisting discovery." First American Corp., 154 F.3d at 22. The Court has heard Defendant on the issue of her deposition for the past six months. The Court has been understanding of Defendant's work schedule, her moves from country to country, and her insistence that Plaintiff must comply with the Hague Convention, instead of simply issuing an order compelling her testimony. However, it now appears that Defendant simply wishes to delay this proceeding to the extent possible. The Court does not see any good faith reason why Defendant will not give her consent pursuant to the Hague Convention, nor any good faith reason why Defendant refuses to sit for her deposition even outside of those concerns. In Defendant's own words when asked about her resistance to her deposition, "I will not make the government's life easier, no." H'ng

Tr. at 17:16-17, dated Sept. 27, 2022. The fourth factor weighs in favor of compelling Defendant's deposition.

Thus, all four factors weigh in favor of compelling Defendant's deposition: the U.S. interest outweighs the French interest, there is minimal hardship to Defendant, Plaintiff is entitled to their party-opponent's deposition under the Federal Rules, and Defendant's resistance is no longer considered to be in good faith. This result from the comity analysis means there is no need for the Court to act pursuant to other laws in this matter. See, e.g., Linde v. Arab Bank, PLC, 706 F.3d 92, 114 (2d Cir. 2013) (collecting cases where courts have compelled discovery "notwithstanding competing foreign legal obligations"). As such the Court will simply compel the Defendant to sit for her deposition by the power of the U.S. judiciary alone. Plaintiff's motion to compel is GRANTED.

## C. **Defendant has already consented for purposes of the Hague Convention.**

For completion's sake, the Court will also briefly turn to the question which was originally asked in this round of briefing: namely, whether Defendant already consented to discovery via the Hague Convention when she signed the initial case management questionnaire. As stated above, Dkt. No. 67 states that "Defendant is not willing to provide discovery voluntarily and thus Plaintiff will need to seek Party discovery under Chapter 1 of the Hague Evidence Convention." The document is signed by both Parties.

Plaintiff in their letter states that "it does not appear that Ms. Buff has previously consented to a voluntary deposition under Chapter II of the Hague

Convention" as the questionnaire specifies Chapter I of the Hague Convention, not Chapter II which governs voluntary discovery efforts."  Pls. Letter at 3, dated Sept. 2, 2022 (Dkt. No. 109).  However, in her opposition Defendant states that "AUSA Jude and I never discussed the relevant provision of the Convention.  She determined that in the circumstances the way forward was via Chapter I, and I did not disagree." Def.'s Letter at ¶ 2, dated Sept. 9, 2022, (Dkt. No. 113).

AUSA Jude does not appear to be affiliated with this case anymore.  There is no transcript of the hearing at which Judge Fox ordered the current discovery schedule, allowing an extension period for fact discovery in consideration of the use of the Hague Convention.  As such, this Court is left with little record to determine exactly what happened in October 2021.

What seems evident, however, is that it was the *intent* of the parties to proceed via the Hague Convention, and that the Parties were simply unfamiliar with the instrument. This was revealed in this Court's first conference with the Parties on this issue, where it appeared that Defendant was unaware the Hague Convention did not apply in Belgium where she resided at the time.  The Court interpreted that as good faith unfamiliarity with the Convention.   Defendant has stated on numerous occasions that the driving factor for why she insists that Plaintiff move via the Hague Convention is because she is concerned about violating "the domestic laws of France and/or Belgium" as well as violating "relevant international law, including the Convention of 18 March 1970 on Taking Evidence Abroad in Civil or Commercial Matters."  Opp. to Motion to Compel at ¶ 2, dated July 13, 2022 (Dkt. No. 96).  By

consenting to proceed under the rules laid out by the Hague Convention and France's reservations to it, she is protected from any such liability.  It is unclear what else prevents Defendant from consenting, other than a reluctance to advance or resolve this case.  In fact, Defendant stated in that same filing on July 13, 2022 that "[she had] never said that [she] would not sit for a deposition."  Id.  Defendant is a party to this action, and Plaintiff is entitled to take her deposition.  It is the viewpoint of the Court that Defendant gave her consent as required by France's reservations to the Hague Convention in October 2021; for her to withhold the formality at this late stage, when she has received the relief she has allegedly sought over the last eleven months, is simply obstructionist.

### D. If Defendant does not sit for her deposition, she has waived her right to raise defenses at summary judgment.

Finally, it is the opinion of the Court that if Defendant refuses to sit for her deposition she will have waived her right to raise any defenses at the summary judgment stage.  At the conference scheduled for October 21, 2022, the Court will discuss an appropriate extension of the discovery schedule for the sole purpose of taking Defendant's deposition.  Should Defendant's deposition not have been taken by the conclusion of the extended discovery schedule, Plaintiff is invited to file a motion with the District Judge limiting Defendant's defenses to their anticipated motion for summary judgment.

### DEFENDANT'S REQUEST TO SEAL THE DOCKET

Separately, Defendant has moved to place any documents in this case containing confidential tax information under seal.  Dkt. No. 111 ("Motion to Seal").

Defendant raises the concern that when her name is searched on common internet search platforms, the filings in this case appear as results and those documents contain information which Defendant seeks to seal.  Id. at 2.  Defendant requests that the Court order that every document containing tax information be placed under seal, both retroactively and moving forward, as well as requesting a Court order to have Plaintiff conduct a series of internet search engines in order to remove this confidential information from their sites.  Id.

Confidentiality of information contained in tax returns is addressed in 26 U.S.C. § 6103.  That statute contains a provision addressing disclosure of such information in judicial and administrative tax proceedings.  Specifically, § 6103(h)(4) states that "a return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only … if the taxpayer is a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability, or the collection of such civil liability."  This proceeding concerns Defendant's civil liability with respect to her prior tax history.  Thus, the filings in this case and the tax return information contained within them fall squarely within the judicial exception to the confidentiality statute governing this issue.

Defendant is of course entitled to the redactions specified in Federal Rule of Civil Procedure 5.2(a) and Local ECF Rule 21.3.  As Plaintiff has represented that all redactions required by that Rule have been made in the filings in this matter, the

Court will not issue an Order to that effect.  See Pl.'s Letter at 3, dated Oct. 7, 2022

(Dkt. No. 118).  The motion to seal is DENIED.

SO ORDERED.

DATED:      New York, New York
            October 20, 2022

JENNIFER E. WILLIS
United States Magistrate Judge