UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  -v-<br><br>CAROLYN BUFF,<br><br>      Defendant. | No. 19 Civ. 5549 (GBD)(JW) |

**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO PRECLUDE CERTAIN DEFENSES**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2768
stephen.cha-kim@usdoj.gov

STEPHEN CHA-KIM
Assistant United States Attorney
– Of Counsel –

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..........................................................................................................................2

    A.    Regulatory Background: Required Disclosures of Foreign Financial Accounts and Penalties for Non-Willful Failure to File FBARs ............................................2

    B.    Relevant Factual Background ................................................................................3

    C.    Procedural History .................................................................................................6

ARGUMENT .................................................................................................................................7

    I.    The Court Should Grant Summary Judgment to the Government................................7

    A.    Legal Standard for Summary Judgment ................................................................7

    B.    Buff's Non-Willful Failure to Report Her Ownership of Several Foreign Accounts Is Undisputed .........................................................................................8

    C.    Buff Cannot Rely on Any Reasonable Cause Defense ..........................................9

    II.    The Court Should Preclude Buff from Raising Any New Reasonable Cause or Other Defense ........................................................................................................10

CONCLUSION ............................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................................................... 7

*Anemone v. Metro. Transp. Auth.*,
  629 F.3d 97 (2d Cir. 2011) ......................................................................................... 7

*Brown v. Eli Lilly & Co.*,
  654 F.3d 347 (2d Cir. 2011) ....................................................................................... 8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................................... 7

*Chevron Corp. v. Donziger*,
  296 F.R.D. 168 (S.D.N.Y. 2013) .............................................................................. 12

*Doubleday & Co., Inc. v. Curtis*,
  763 F.2d 495 (2d Cir. 1985) ..................................................................................... 10

*LeBoeuf, Lamb, Greene & MacRae, LLP v. Worsham*,
  185 F.3d 61 (2d Cir. 1999) ......................................................................................... 8

*Matsushita Elec. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .................................................................................................... 7

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010) ..................................................................................... 11

*Schwind v. EW & Associates, Inc.*,
  357 F. Supp. 2d 691 (S.D.N.Y. 2005) ...................................................................... 10

*Shannon v. N.Y.C. Transit Auth.*,
  332 F.3d 95 (2d Cir. 2003) ......................................................................................... 7

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group*,

    328 F.R.D. 100 (S.D.N.Y. 2018) ............................................................................... 11, 12

*United States v. Bittner*,

    19 F.4th 734 (5th Cir. 2021) ............................................................................................ 3, 9

*United States v. Kaufman*,

    No. 18 Civ. 787, 2021 WL 83478 (D. Conn. Jan. 11, 2021) ............................................. 9

*United States v. Ott*,

    No. 18 Civ. 12174, 2019 WL 3714491 (E.D. Mich. Aug. 7, 2019) ................................ 10

*Weinstock v. Columbia Univ.*,

    224 F.3d 33 (2d Cir. 2000) ................................................................................................ 7

**Statutes**

31 U.S.C. § 3717(e) .................................................................................................................... 6

31 U.S.C. § 5314 ..................................................................................................................... 1, 2

31 U.S.C. § 5321 ......................................................................................................................... 1

31 U.S.C. § 5321(a)(5) ................................................................................................................ 3

31 U.S.C. § 5321(a)(5)(B)(ii)(I) .............................................................................................. 3, 9

**Regulations**

31 C.F.R. pt. 1010 ....................................................................................................................... 3

31 C.F.R. § 103.24 (2008) .......................................................................................................... 2

**Rules**

Fed. R. Civ. P. 5.2(a) .................................................................................................................. 5

Fed. R. Civ. P. 8(c)(1) ............................................................................................................... 10

Fed. R. Civ. P. 8(d) .................................................................................................................. 8

Fed. R. Civ. P. 37(b)(2)(A)(ii) ............................................................................................... 11

Fed. R. Civ. P. 56(a) .............................................................................................................. 7

Fed. R. Civ. P. 56(c)(1) .......................................................................................................... 7

Plaintiff the United States of America (or the "Government"), by its attorney, Damian Williams, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion for summary judgment and its motion to preclude Defendant Carolyn Buff ("Buff") from asserting certain defenses thereto in light of her failure to comply with the Court's order compelling her deposition.

## PRELIMINARY STATEMENT

Following an administrative investigation, the Internal Revenue Service ("IRS") assessed $60,000 in civil penalties against Buff for her failure to file timely Reports of Foreign Bank and Financial Accounts ("FBARs") disclosing her interest in six bank accounts in Switzerland and France for calendar years 2006, 2007, and 2008, as required by the Bank Secrecy Act ("BSA"), 31 U.S.C. §§ 5314, 5321. The Government brought this action to reduce the assessed penalties to judgment following Buff's failure to pay the assessed penalties.

The material facts are not in dispute. Buff is a dual American and French citizen who divides her time between Europe and the United States. Buff held ownership interests in foreign financial accounts at UBS Bank ("UBS"), Barclays Bank ("Barclays"), and BNP Paribas Bank ("BNP Paribas") in 2006, 2007, and 2008. The combined balance of these accounts in each of those years was well over $10,000, which triggered Buff's obligation to file timely FBARs. Buff has never denied that she non-willfully failed to do so.

Moreover, Buff cannot establish she had any reasonable cause for her failure to file timely FBARs. To begin with, she waived any such defense by failing to raise it in her answer to the United States' complaint. Even if she had not waived it, the now-closed record includes no evidence suggesting a triable issue regarding such a defense. And as this Court has previously held, Buff's continuing refusal to sit for her deposition must result in an appropriate

consequence: her preclusion from raising any new defense, the factual basis of which the Government could have probed at her deposition.

Accordingly, the Court should grant the Government summary judgment and reduce to judgment the IRS's assessed penalties, and preclude Buff from raising new defenses at this juncture. As described below, the amount of the judgment should be $60,000 in penalties (plus applicable interest and additional statutory penalties) or—if the U.S. Supreme Court's upcoming opinion in *Bittner v. United States*, No. 21-1195, concludes that the BSA's $10,000 penalty for non-willful failure to file FBARs applies per year rather than per account—$30,000 (plus applicable interest and additional statutory penalties).

## BACKGROUND

### A. Regulatory Background: Required Disclosures of Foreign Financial Accounts and Penalties for Non-Willful Failure to File FBARs

Congress enacted the BSA to facilitate and monitor compliance with currency regulation and tax laws. *See* H.R. Rep. No. 91-975, at 12-13 (1970). Among the law's objectives was to combat tax evasion and abusive tax schemes employing offshore bank accounts, particularly in jurisdictions with extensive bank secrecy laws, like Switzerland. *See id.*; S. Rep. No. 108-192, at 108 (2003). The BSA accordingly empowers the U.S. Department of the Treasury to require United States persons to report certain transactions with foreign financial agencies. *See* 31 U.S.C. § 5314.

Specifically, the statute's implementing regulations in effect at the relevant time required "[e]ach person subject to the jurisdiction of the United States . . . having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country" to report that interest for each calendar year in which such relationship existed. 31

C.F.R. § 103.24 (2008).[1] To fulfill this requirement, covered persons were required to file a Form TD F 90-22.1, known as an FBAR, by June 30 "of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." *Id.* § 103.27(c). The Government may assess a civil penalty of up to $10,000 against a covered person who fails to comply with these reporting requirements, including for violations that are non-willful. *See* 31 U.S.C. § 5321(a)(5). The IRS has discretion to determine the precise penalty it assesses, up to the statutory maximum. *See* I.R.M. § 4.26.16.5(3). No penalty applies if the "violation was due to reasonable cause." 31 U.S.C. § 5321(a)(5)(B)(ii)(I).

The U.S. Supreme Court recently heard oral argument in *Bittner*, in which the Court will determine whether the § 5321 penalty was meant to be imposed for each unreported account or for each reporting year in which FBARs were not filed. *See* Pet'n for Cert., *Bittner v. United States*, No. 21-1195, 2022 WL 625111, at *1 (U.S. filed Feb. 28, 2022). Consistent with the Fifth Circuit's holding, *United States v. Bittner*, 19 F.4th 734, 749 (5th Cir. 2021), *cert. granted*, 142 S. Ct. 2833 (2022), the Government's position is that Congress permitted the IRS to assess up to the maximum statutory penalty for each unreported account, and was not limited to assessing a single penalty for each year in which a taxpayer failed to report accounts. *See* Br. for Resp., *Bittner*, No. 21-1195, 2022 WL 4779399, at *14 (U.S. filed Sep. 30, 2022).

B.   **Relevant Factual Background**

Carolyn Buff was at relevant times a dual American and French citizen. *See* Government's Statement of Material Facts ("56.1 Stmt.") ¶ 1. In or around August 2011, based in part on Buff's 2008 income tax return and information obtained from UBS, the IRS

---

[1] The relevant regulations have since been amended and recodified at 31 C.F.R. pt. 1010. The 2008 version of these regulations is available at https://www.govinfo.gov/content/pkg/CFR-2008-title31-vol1/pdf/CFR-2008-title31-vol1-part103-subpartB.pdf.

3

ascertained that Buff had failed to file at least one FBAR in the preceding years. *Id*. ¶ 2. The IRS informed Buff that it would audit her, and served an Information Document Request ("IDR") requesting information and records about her income and bank accounts in September 2011. Declaration of Stephanie Tse dated Dec. 23, 2020 ("12/23/20 Tse Decl.") [ECF No. 37], ¶ 4.

Through an accountant with power of attorney, Buff submitted untimely FBARs dated September 21, 2011, for calendar years 2003 through 2008 that disclosed her ownership of a UBS account in Switzerland, which she reported as having varied in maximum value from over $100,000 to over $1 million during the years at issue. 56.1 Stmt. ¶ 3. On August 20, 2012, Buff was administratively deposed by the IRS. 12/23/20 Tse Decl. ¶ 9. During the deposition, Buff admitted that she had had financial interests in the UBS account she previously disclosed, as well as in foreign accounts at Barclays and BNP Paribas in France. 56.1 Stmt. ¶ 4. She conceded that she had signed the untimely FBARs for the UBS account she had submitted to the IRS. *Id*. ¶ 5.

The IRS subsequently issued additional IDRs to Buff, the last of which was issued on February 10, 2015. 12/23/20 Tse Decl. ¶ 7. Buff provided some documents in response, though only after the IRS extended her time to respond several times. *Id*. Buff agreed to extend the IRS's deadline for assessing penalties against her to December 31, 2017. 56.1 Stmt. ¶ 6.

The IRS ultimately learned that Buff's financial interests in the UBS, Barclays, and BNP Paribas accounts exceeded $10,000 in 2006, 2007, and 2008, which had made FBAR-filing obligatory for those accounts. *Id*. ¶ 7. In sum, based on the IRS's review of available statements and other financial records, Buff had interests in the following financial accounts for all of 2006,

2007, and 2008, for which the highest balances during each calendar year are shown in the table below[2]:

| Account | 2006 | 2007 | 2008 |
|---|---:|---:|---:|
| UBS 8178 | $1,888,930 | $2,047,400 | $1,426,150 |
| Barclays 6001 | $1,086 | $42,629 | $19,989 |
| Barclays 0901 | $1,028 | $17,758 | $22,255 |
| Barclays 0902 | n/a | $118 | $116 |
| BNP Paribas 3995 | n/a | n/a | $1,505 |
| BNP Paribas 9652 | $1,388 | $2,661 | $1,042 |

*Id.*[3] Buff did not file timely FBARs reporting any of her UBS, Barclays, and BNP Paribas accounts for 2006, 2007, and 2008. *Id.* ¶ 8.

In August 2015, March 2016, and September 2016, the IRS sent notices to Buff proposing that it would assess penalties totaling $60,000 against her, comprising $20,000 per year for her failure to file FBARs reporting her interests in the UBS, Barclays, and BNP Paribas accounts for 2006, 2007, and 2008. *Id.* ¶ 9. On June 14, 2017, the IRS assessed the proposed $60,000 penalties. *Id.* ¶ 10.

---

[2] Only the last four digits of the account numbers are listed, consistent with Fed. R. Civ. P. 5.2(a).

[3] In the interest of minimizing the number of Buff's financial records filed on the docket, rather than filing all the records in the IRS' possession, the Government has attached to a supporting declaration copies of statements for each account sufficient to show their existence in the relevant year and the requisite aggregate balance of over $10,000. *See* Declaration of Stephanie Tse dated January 27, 2023 (1/27/23 Tse Decl.), ¶¶ 6-8 & Exs. B, C, D. Should the Court so require, the Government is prepared to submit additional records.

In addition to the assessed penalties of $60,000, Buff is liable for interest that continues to accrue as well as certain additional statutory penalties under 31 U.S.C. § 3717(e).[4]

### C. Procedural History

After Buff failed to pay the assessed penalty or otherwise respond to the IRS's penalty assessment, the Government filed its complaint in this action on June 13, 2019. [Dkt. No. 1]. After initially defaulting [Dkt. No. 13], Buff, proceeding *pro se*, answered the complaint on November 9, 2020, asserting as affirmative defenses the Government's "[f]ailure to provide underlying evidence of claims" and "improper service" of the complaint [Dkt. No. 27, at 1, 2]. Over a month later, on December 15, 2020, Buff moved to dismiss for improper service and in the alternative for summary judgment [Dkt. No. 32], which the Court denied by order dated September 13, 2021 [Dkt. No. 56] (adopting report and recommendation at Dkt. No. 45).

During discovery, the Government repeatedly sought to take Buff's deposition consistent with the Hague Convention on the Taking of Evidence Abroad and other international law, in light of her residence abroad. *See* Order Compelling Dep. [Dkt. No. 126] at 3-4. After Buff repeatedly refused to be deposed, the Court granted the Government's motion to compel Buff's deposition, holding that "if Defendant refuses to sit for her deposition she will have waived her right to raise any defenses at the summary judgment stage," and directing the Government to file an appropriate motion "[s]hould Defendant's deposition not have been taken by the conclusion of" discovery. *Id*. at 14, 16. Following the Court's order, Buff continued to resist the

---

[4] As of June 30, 2022, the last date for which calculations are available, Buff owed the IRS a total of $81,195.62, based on underlying penalties of $60,000. 1/27/23 Tse Decl. ¶ 13. Should the Court grant the Government's motion for summary judgment, and upon the Supreme Court's resolution of *Bittner*, the Government will submit a proposed final judgment with updated calculations of interest and § 3717(e) penalties based on the appropriate underlying amount of penalties consistent with the holding in *Bittner*.

Government's efforts to schedule her deposition before the end of discovery. *See* Declaration of Stephen Cha-Kim, dated January 27, 2023 ("Cha-Kim Decl."), ¶¶ 2-3.

Adjudication in the first instance of the Government's summary judgment and other motions was referred to this Court by order dated January 3, 2023 [Dkt. No. 149].

**ARGUMENT**

**I.     The Court Should Grant Summary Judgment to the Government**

**A.     Legal Standard for Summary Judgment**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that it is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "[T]he nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial." *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003) (citing *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *see also* Fed. R. Civ. P. 56(c)(1).

In reviewing a summary judgment motion, the Court construes the evidence "in the light most favorable to the non-movant and draw[s] all reasonable inferences in that party's favor." *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 113 (2d Cir. 2011). However, "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), and the existence of a factual dispute does not preclude summary judgment where "the evidence is merely colorable, or is not significantly probative," *Anderson*, 477 U.S. at 249. The nonmoving party may not rely solely on "conclusory allegations or unsubstantiated speculation" to defeat a motion for summary judgment, but instead "must come forward with

7

specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

> B.  **Buff's Non-Willful Failure to Report Her Ownership of Several Foreign Accounts Is Undisputed**

There is no serious dispute that the IRS appropriately assessed penalties for Buff's failure to report interests in foreign bank accounts in 2006, 2007, and 2008. At the outset, Buff's answer [Dkt. No. 27] did not deny or otherwise contest the Government's allegations outlining, for the years in question, the existence of the UBS, Barclays, and BNP Paribas accounts in Buff's name, their balances, and her failure to timely file FBARs reporting them. As the Second Circuit has made clear, "averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading." *LeBoeuf, Lamb, Greene & MacRae, LLP v. Worsham*, 185 F.3d 61, 66 (2d Cir. 1999) (quoting Fed. R. Civ. P. 8(d)). The facts underpinning Buff's liability under the BSA are thus admitted on this basis alone.

Even if Buff had not effectively admitted the relevant facts, discovery has confirmed that there is no triable issue of fact with respect to: whether Buff had ownership interests in the bank accounts at issue for the relevant years, whether the balances in those accounts together exceeded $10,000, and whether Buff non-willfully failed to file timely FBARs. As the relevant bank statements show, Buff owned the accounts in the relevant years, and their aggregate total balance in each year was in the seven figures. 56.1 Stmt. ¶ 7. Indeed, Buff acknowledged at least one UBS account in her name for the years at issue in her untimely FBARs, and admitted at her administrative deposition that she also owned the other UBS, Barclays, and BNP Paribas accounts. *Id*. ¶ 4. The IRS did not receive timely FBAR filings reflecting the UBS, Barclays, and

BNP Paribas accounts for 2006, 2007, and 2008, *id.* ¶ 8, nor has Buff ever asserted that she filed them.

Accordingly, it is uncontested that Buff failed to file timely FBARs for the accounts and years in question.[5]

### C. Buff Cannot Rely on Any Reasonable Cause Defense

The BSA excuses a taxpayer from penalties for a non-willful failure to file an FBAR in cases of "reasonable cause." 31 U.S.C. § 5321(a)(5)(B)(ii)(I). The statute does not define "reasonable cause," but courts have understood that term to reflect its usage in other parts of the Internal Revenue Code. *See Bittner*, 19 F.4th at 741 (drawing on other "reasonable cause" exceptions to find defense requires "objective" "showing that the individual exercised ordinary business care and prudence" (citations omitted)); *United States v. Kaufman*, No. 18 Civ. 787, 2021 WL 83478, at *3 (D. Conn. Jan. 11, 2021) (looking to other tax code contexts and noting that reliance on accountant is not valid reasonable cause). Whatever its precise scope, Buff cannot rely on this defense here because she did not raise it in her answer and, in any event, because there is no triable issue with respect to any purported reasonable cause. *See Bittner*, 19 F.4th at 742 (rejecting argument that reasonable cause cannot be determined as matter of law prior to trial because "[w]hile a reasonable-cause defense depends on all pertinent facts and circumstances, only disputed questions of material fact will preclude summary judgment").

---

[5] As discussed above, should the U.S. Supreme Court determine in its forthcoming opinion in the *Bittner* case that the IRS may only assess a single $10,000 penalty for each year in which a taxpayer non-willfully failed to report its foreign accounts on an FBAR, the Government will amend its complaint to seek only $30,000 ($10,000 for each year at issue) in underlying penalties, rather than the $60,000 in its current complaint. The Government will also promptly amend its pre-judgment writ of garnishment [Dkt. No. 139] to ensure that only an amount consistent with the Supreme Court's decision remains garnished.

The Federal Rules of Civil Procedure provide that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c)(1). "The Second Circuit has stated that Rule 8(c)'s 'mandatory language has impelled us to conclude that a party's failure to plead an affirmative defense bars its invocation at later stages of the litigation.'" *Schwind v. EW & Associates, Inc.*, 357 F. Supp. 2d 691, 697 (S.D.N.Y. 2005) (quoting *Doubleday & Co., Inc. v. Curtis*, 763 F.2d 495, 503 (2d Cir. 1985)). A party's assertion that it had reasonable cause for its failure to timely file an FBAR is effectively an affirmative defense. *See United States v. Ott*, No. 18 Civ. 12174, 2019 WL 3714491, at *2 (E.D. Mich. Aug. 7, 2019) ("In litigation a taxpayer's contention of 'reasonable cause' is in the nature of an affirmative defense, which the taxpayer is obliged to raise." (citation omitted)). Thus, Buff's failure to raise this defense in her answer "bars its invocation" now.

Even if Buff had not waived this defense, she cannot defeat summary judgment with such a defense because the evidence the parties exchanged during discovery includes nothing relevant to create any triable issue of fact. *See id.* at *3 (noting defendant's burden of establishing reasonable cause and of "present[ing] facts and evidence demonstrating a genuine issue for trial" prior to summary judgment). And, as discussed below, Buff should be precluded from attempting to introduce new facts in support of such a defense at this juncture. Accordingly, the Government is entitled to summary judgment in light of the lack of any reasonable cause Buff had to fail to file timely FBARs.

## II. The Court Should Preclude Buff from Raising Any New Reasonable Cause or Other Defense

Although the Court ordered Buff to sit for her deposition, she resisted all efforts to schedule it. *See* Cha-Kim Decl. ¶¶ 2-3. Accordingly, as previously directed by the Court, the Government now seeks an order precluding Buff from raising any new defense in opposition to

its summary judgment motion, the factual basis of which defense could have been discussed at her deposition.

The Second Circuit has set forth four factors for district courts to consider in exercising their discretion to impose discovery sanctions: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010). All four factors support the relief sought here. As to the first, the Court has already concluded that Buff's resistance to being deposed was "simply obstructionist." Order Compelling Dep. at 16. Next, there is no effective, lesser consequence that would resolve the problem at hand, namely, Ms. Buff's refusal to sit for a deposition. Further, Buff's resistance to the scheduling of her deposition took place over several months, even after this Court ordered her to be deposed. Lastly, the Court already warned Buff of the consequences of her continued non-compliance, precisely the relief the Government seeks here. *See id*.

As to the specific relief of preclusion requested, it is well established that courts may, in face of a violation of a discovery order, "prohibit[ ] the disobedient party from supporting or opposing designated claims or defenses." Fed. R. Civ. P. 37(b)(2)(A)(ii). "In determining whether preclusion is appropriate, courts should consider, inter alia: (1) the party's explanation for the failure to comply with the discovery requirement; (2) the importance of the precluded evidence; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group*, 328 F.R.D. 100, 119 (S.D.N.Y. 2018) (citation and alterations omitted). Here, each of these factors supports the preclusion sought.

First, as the Court has already noted, Buff has no credible explanation for flouting her discovery obligations. Order Compelling Dep. at 13 ("The Court does not see . . . any good faith reason why Defendant refuses to sit for her deposition . . . ."). Next, the importance of the evidence at issue is self-evident: Buff's testimony would have been necessary for the Government to understand the factual basis of any good-faith defense she may have raised. The Government would be prejudiced if Buff could evade her deposition but raise new facts or defenses after discovery closed. Finally, there is no reason why a continuance would be appropriate, given the lengthy discovery period and Buff's repeated failure to cooperate with the scheduling of her deposition over many months. For all these reasons, precluding Buff from unfairly introducing any new defense that could have been discussed at her deposition would be a "just" consequence that is "commensurate with the non-compliance" at issue. *Syntel Sterling*, 328 F.R.D. at 120 (quoting *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 220 (S.D.N.Y. 2013)).

Accordingly, as previously outlined by the Court, Buff should be precluded from asserting new defenses in opposition to the Government's summary judgment motion.

## CONCLUSION

The Court should thus grant the Government's motion for summary judgment and preclude Buff from asserting new defenses thereto in light of her violation of the Court's order compelling her deposition.

Dated: January 27, 2023
      New York, New York

                                                            Respectfully submitted,

                                                            DAMIAN WILLIAMS
                                                            United States Attorney for the
                                                            Southern District of New York

                                     By:    /s/ Stephen Cha-Kim
                                                            STEPHEN CHA-KIM
                                                            Assistant United States Attorney
                                                            86 Chambers Street, 3rd Floor
                                                           New York, New York 10007
                                                           (212) 637-2768
                                                           stephen.cha-kim@usdoj.gov