UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America                  **Case: 19-CV-5549 (GBD) (JW)**
-Plaintiff-

    v.

Carolyn Buff
-Defendant- *Pro Se*

_____

# RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT AND

# CROSS-MOTION PURSUANT TO FRCP 15 and 60

_____

AFFIRMATION AND MEMORANDUM OF FACT AND LAW

_____

Carolyn Buff (Pro Se)

11 Rue Sedaine

75011 Paris, France

Carolynjbuff@yahoo.com

+33 7 84 59 90 40

I, your affiant and Defendant, Carolyn Buff, duly sworn, under Penalty of Perjury of the Laws of the United States, affirm the following:

## RESPONSE TO PLAINTIFF'S MOTION

1. On January 27, 2023, the Plaintiff filed its Motion for Summary Judgement and Motion to Preclude Certain Defenses ("Motion," Memorandum of Law, Dkt. No.154).

2. In reviewing a motion for summary judgement, the Court "construes the evidence in the light most favorable to the non-movant and draws all reasonable inferences in that party's favor." (Motion, p. 7).

3. For the sake of clarity, the Plaintiff's submissions on preclusion and other matters will be addressed in the cross-motion.

## CROSS-MOTION PURSUANT TO FRCP 15(d) and 60(b)(3)

### Introduction

4. This Cross-Motion consists of: i) a motion to amend pleadings pursuant to Federal Rule of Civil Procedure (FRCP) 15 (d), and specifically to amend my Answer to the Plaintiff's Complaint to assert two affirmative defenses; and a request for relief of this Court's Order at Dkt. No. 126 ("Order"), based on a critical misrepresentation by the opposing party, pursuant to FRCP 60(b)(3). This is not a Motion for reconsideration pursuant to Joint SDNY/EDNY Local Rule 6.3 and is therefore filed within the deadlines established by the FRCP and other relevant law.

**FRCP 15 (d)**

Introduction

5. FRCP 15 (d) establishes that on motion and notice, the court may permit a supplemental pleading even though the original pleading "is defective in stating a claim or defense." Pursuant to this Rule, I wish to amend my pleadings to add two affirmative defenses in this matter.

2

6. 31 U.S.C. § 5321(a)(5)(B)(ii)(I) and (II) establish that "no penalty shall be imposed" in FBAR cases "if such violation was due to reasonable cause, and the amount of the transaction or the balance in the account at the time of the transaction was properly reported."

7. Although the Statute does not define reasonable cause, and the FBARs at issue do not constitute tax matters (see below), the Court may nonetheless consider 26 CFR 301.6724-1 of the tax code as instructive in interpreting the term "reasonable cause." That rule establishes that "events beyond the filer's control" constitute reasonable cause, and that such events, include, inter alia: i) the unavailability of the relevant business records, and iv) certain actions of an agent.

8. It is not in dispute that I have never prepared my own tax returns and FBARs and that this information has always been collected, analyzed, and filed on my behalf by an "agent", in this case, a certified public accountant. Further, my agent has asserted that he was not able to access the relevant business records in a timely manner.

Timing of the assertion of an affirmative defense

9. The Plaintiff has recurrently demonstrated a predilection for citing case law out of context in this case. In support of its submission that I have waived my right to an affirmative defense, the Plaintiff cites *Schwind v. E.W& Associates* 375 F Supp. 2d. 691 (Motion, p. 10). The *Schwind* Court discussed and rejected the conclusion cited by the Plaintiff, holding instead that FRCP 15 provides for the amendment of defective pleadings of affirmative defenses: "the Second Circuit has held that 'a district court may consider the merits of an affirmative defense — even one explicitly listed as such in Fed.R.Civ.P. 8 (c) — raised for the first time at the summary judgment stage, so long as the plaintiff has had an opportunity to respond.'" Citing *Astor Holdings, Inc. v. Roski, III,* 325 F. Supp. 2d 251 (S.D.N.Y. 2003) (citing *Curry v. City of Syracuse,* 316 F.3d 324, 330-31 (2d Cir. 2003) (allowing collateral estoppel to be raised as an affirmative defense even though raised for the first

time in reply memorandum in support of a motion for summary judgment where plaintiff was provided notice, had an opportunity to respond and was not prejudiced by failure to plead the affirmative defense in answer). The Court added: "Numerous courts have held that 'absent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time," citing, inter alia, *Block v. First Blood Assoc.*, 988 F.2d, 344, 349-351: affirming the district court's consideration of an affirmative defense first raised in summary motion where Plaintiff did not show bad faith or prejudice. (*Schwind*, id.).

Prejudice to the Plaintiff

10. The Plaintiff argues that even if I have not waived any defenses, I "cannot defeat summary judgment with such a defense because the evidence the parties exchanged during discovery includes nothing relevant to create any triable issue of fact." (Motion, p. 10), and that it would be prejudiced if I "could… raise new facts or defenses after discovery closed." [Motion, p. 12].

11. I do not intend to raise new facts as the relevant facts were disclosed to me by the Plaintiff in December 2021 and January 2022, and were known to the Plaintiff before that. With respect to my first affirmative defense - the actions of my accountant -, the Plaintiff referred to my "authorized representative" in the Complaint against me (Dkt. No. 1, para. 70). The Plaintiff referred to my second affirmative defense - the absence of relevant business records - in para. 73 of the Complaint. Thus, there are no new facts at issue, and the absence of a deposition did not prejudice the Plaintiff as my accountant's role in filing the FBARs are not in dispute.

12. Moreover, the Plaintiff clearly anticipated the first affirmative defense in its Motion arguing that "reliance on an accountant is not valid reasonable cause." (Motion, p. 9). In support of this proposition - which is plainly at odds with the "reasonable cause" grounds set out in tax code - the

Plaintiff misleadingly cites the District of Connecticut's decision in *United States v. Kaufman* No. 18 Civ. 787, D. Conn. Jan. 11, 2021 (Motion, p. 9).[1]

13. In that case, the Court observed that it was undisputed that "[w]hen preparing Kaufman's 2008 tax return, (Kaufman's accountant) asked Kaufman whether he had any 'foreign bank accounts and Kaufman responded that he did not. In response, his accountants asked Kaufman, who was living abroad, how he was paying his bills abroad if he did not have any foreign financial accounts. Kaufman responded that he used a brokerage account in the United States." The accountants also sent Kaufman reminders each year about FBAR requirements. The Court additionally reviewed other cases in which courts rejected accountant-based reasonable cause defenses in FBAR litigation and concluded that in each case the defendant "either failed to mention their foreign accounts to their tax preparer…or affirmatively represented to their tax preparer that they did not have foreign bank accounts." (Ibid., pp. 6-7).

14. The instant case is in no way analogous. My accountant, Harvey Mendelsohn, was well aware of my foreign bank accounts because he had been filing tax returns for my immediate family members for years, and in my father's case, decades. From my French grandmother's death, we each had at least one foreign bank account which we inherited from her. She kept most of her assets in Switzerland because the Nazi regime expropriated all the assets she and her family held in Germany, and she feared that the only country which could be counted on not to do the same was Switzerland. On Mr. Mendelsohn's advice, my brother transferred his account to the United States soon after my grandmother's death. My father did the same a decade later. Mr. Mendelsohn was also aware that I had been living abroad for over a decade during the period at issue and had additional foreign accounts for that reason.

---

[1] Available at: https://casetext.com/case/united-states-v-kaufman-34

15. Additionally, Mr. Mendelsohn submitted two letters to the IRS in this case[2] in which he stated that he had been unable to obtain information from my Swiss bank during the relevant years (Exhibit A), and the Plaintiff referred to these submissions in para. 73 of its Complaint (Dkt. No. 1). These letters were disclosed to me by the Plaintiff in December 2021 and January 2022,[3] although the disclosure did not include any responses to my accountant from the IRS. Be that as it may, the letters not only support my contention that my accountant was aware of my foreign accounts at the relevant time but indicate that relevant business records were unavailable.

16. In sum, there is no merit in the Plaintiff's assertion that it would be prejudiced by any late mention of affirmative defenses in this case.

Affirmative defenses-the facts

17. All matters relevant to the FBARs in this case were handled by my accountant, Mr. Mendelsohn, at a time when he was working for my father, my brother, and I. With respect to the Swiss bank account, Mendelsohn's letters indicate that he had trouble obtaining the relevant records for the Swiss banks at issue. I do not know why he did not report the information available regarding my French bank accounts while waiting to obtain the relevant information regarding my Swiss account. Throughout this period during which I worked abroad, my late father would communicate with Mendelsohn on my behalf as Mr. Mendelsohn did not use email or make international phone calls, and my father was more knowledgeable about tax matters.[4]

---

[2] Dated December 6, 2016 and June 26, 2017.
[3] The Plaintiff in this case is the United States of America. Disclosure came in two forms. The first was information transmitted by the Government's representative in this case, Attorney Stephen Cha-Kim in December 2020. In January 2021, I received the response of the United States to a FOIA request for my complete tax file submitted in 2018 (According to FOIA, information sought is to be provided to the requested in 20 days).
[4] Also during much of this period, I was living and working in Sierra Leone, the second poorest country in the world at the time, and thus communications were limited.

**FRCP 60 (b) (3)**

Introduction

18. FRCP 60 (b) (3) establishes that on motion, the court may relieve a party from a final judgement, order or proceeding for, inter alia, "misrepresentation" by an opposing party.

19. In its Motion, the Plaintiff claims that "[d]uring discovery, the Government repeatedly sought to take Buff's deposition consistent with the Hague Convention on the Taking of Evidence Abroad and other international law, in light of her residence abroad" (Motion, p. 6). There is no need to revisit the complicated procedural history in this case here. Suffice it to say that the assertion is nonsense as no deposition would be consistent with the Hague Convention without any communication between the US and French authorities, and the Plaintiff has adduced no evidence of any such communication.

Discussion

20. In its first submission touching on the nature of this case, the Plaintiff carefully chose its words asserting that France "may well consider this action to reduce to judgement penalties assessed by the International Revenue Service to fall outside the scope" of the Hague Convention. (Dkt. No. 109, p. 2). It was less cautious in its subsequent Letter/Motion referring to the Court's request that it "consult again with subject matter experts and cite any authority regarding whether France would consider '<u>tax matters</u> to be administrative matters, thus outside the ambit of the Hague Convention'" (Dkt. No. 118, emph. added). In its Response, the Plaintiff cited a 2008 French government submitted a response to a questionnaire issued by the Special Commission on the operation of the Hague Convention, which included a request that responding States indicate which areas of law they consider to be within the scope of 'civil or commercial matters; as used in the Hague Convention; the French response specifically omitted <u>'Taxation'</u> from the relevant definition." (Dkt. No. 118, p.

1, emph. added).[5] On this basis, the Court concluded that "an issue of tax would not be considered subject to the Hague Convention by the French authorities." (Dkt. No. 126, p. 6).

21. The difficulty is that FBARs are not "tax" matters. A Federal Court of Claims addressed the Bank Secrecy Act in great detail concluding that "[t]he structure of the BSA indicates that the FBAR is not an internal-revenue tax. The FBAR penalty is authorized in Title 31 ("Money and Finance") of the United States Code, not the Internal Revenue Code (I.R.C.), which is found in Title 26 of the United States Code. This distinction is not a mere technicality. The Internal Revenue Code was initially created in an effort '[t]o consolidate and codify the internal revenue laws of the United States.' Thus, although section 1346 does not explicitly limit internal revenue taxes to Title 26 taxes, Congress's placement of FBAR penalties outside Title 26 distinguishes FBAR penalties from internal-revenue laws. Moreover, because the FBAR penalties are not located within Title 26, the FBAR penalties are not subject to the various statutory cross-references that equate 'penalties' with 'taxes'…Unlike the internal-revenue laws…***FBAR penalties are enforced primarily through a "civil action to recover a civil penalty***." *Mendu v. United States*, No. 17-cv-738 T, pp. 13-15 (internal citations omitted, emphasis added).

22. In addition, unlike Form 8938, the FBAR (FinCEN Form 114) is not filed with the IRS. It must be filed directly with the office of Financial Crimes Enforcement Network (FinCEN), a bureau of the Department of the Treasury separate from the IRS. https://www.irs.gov/businesses/comparison-of-form-8938-and-fbar-requirements. See also, 68 Fed. Reg. 26489 (May 16, 2003): "FinCEN, a bureau within the U.S. Department of the Treasury, administers and enforces the BSA and its implementing provisions pursuant to a delegation by the Secretary of the Treasury." https://www.govinfo.gov/content/pkg/FR-2003-05-16/html/03-12211.htm

---

[5] The Court properly understood that in French "fiscalité" refers only to tax matters not all forms of government revenue.

23. Following issuance of the Court's Order at Dkt. No. 126, I retained French counsel, Noelle Lenoir, to advise me on the potential consequences in France of complying with the Order. As set out in her Declaration (Exhibit B), the tax system in France is precisely defined and "tax matters" are narrowly circumscribed, and therefore it is exceedingly probable that France would conclude that this case involves a "civil matter", within the scope of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial matters, rather than an administrative matter outside the Convention's ambit. Moreover, as the Plaintiff in this case was the defendant in *Mendu*, the only reasonable conclusion is that its misleading submissions in this case were deliberate. (See, Dkt. nos. 109, p. 2 and 118, p. 1: both referring to FBARs as tax or administrative matters.)

24. The nature of this case is not a minor technical matter. First, "an attorney is an officer of the court and owes the court fiduciary duties and loyalty" *RCI HV, Inc. v. Transtec (RC) Inc.,* No. 02-CV-04307, and attorneys are expected to be completely candid and forthright in the representations they make during the course of all Court proceedings. *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., 328 F.R.D. 100, 120 (S.D.N.Y. 2018).* In order for the Court to conduct proceedings properly, it must be able to rely upon representations made on the record by attorneys licensed to practice before it. *Accord Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 709 (D.N.J. 2015). Further, as the Plaintiff in this case is the Government of the United States, acting on behalf of all citizens, it is my view that it has a special duty to be punctilious.

25. Second, this Court has concluded that FBARs are tax matters based on the Plaintiff's submissions and this should not stand as the conclusion may be relied on in other cases. Third, this Court found that because the Hague Convention would not apply in this case, the application of French Evidence Law (also known in the United States as "the French Blocking Statute"), which provides for penal sanctions on those who provide information outside the Hague Convention process, was moot. This

in turn led to the Court's conclusion that if I did not sit for a deposition, I could be sanctioned during summary judgement proceedings. (Order, p. 16).

26. The Court also concluded that the French authorities do not enforce the Evidence Law (Id, at pp. 7-8). French case-law is very difficult to access online, but the 2008 questionnaire submitted by the Plaintiff refers to a case in which an appeals court overturned a lower court decision acquitting an individual accused of violating its Evidence Law. (Exhibit C, p. 15). Additionally, in the case against *Christophe X*, the French Supreme Court upheld the conviction of an individual who circumvented the Hague Convention.[6] (See also, Lenoir, Exhibit B).

27. Also at issue in this case is Article 48 of the European General Data Protection Regulation (GDPR) which establishes that: Any judgement of a court or tribunal…of a third country requiring a controller or processor to transfer or disclose personal data may only be enforceable if based on an international agreement, such as a mutual legal assistance treaty, in force between the requesting third country and the Union or a Member State. Lenoir, Exhibit B.

28. In addition to the aforegoing submissions, the Guidelines for Obtaining Cross-Border Evidence, issued by the New York State Bar Association (Exhibit D) establish that "[I]n France… the only legal means of collecting documents or for obtaining witness testimony to be used in a foreign proceeding is through the Hague Evidence Convention" (ibid, ftn. 6), an [i]n the European Union… the General Data Protection Regulation only recognizes judgments of foreign courts pertaining to data transfer if "based on an international agreement . . . in force between the requesting [foreign] country and the Union or a Member State. See GDPR Article 48." (ibid, p. 3).

29. In sum, the Court's decision, based on misleading information submitted by the Plaintiff, compelled me to violate French penal law and European civil law, and consequently my French attorney advised

---

[6] The Plaintiff submitted this document together with a Pleading at Dkt. 118 but it does not appear in the Docket.

me not to comply. (Lenoir, Exhibit B). While US Courts are not required to implement foreign law, they should be mindful about forcing citizens into serious legal jeopardy abroad, particularly when the country and issue cannot reasonably be described as a banana republic and simple alternatives are available - in this case by proceeding in accordance with the Hague Convention, or at a minimum, seeking an opinion on its applicability from the French authorities.

**Preclusion**

30. There is substantial SDNY case law regarding preclusion and other discovery-related sanctions. Sanctions under Rule 37(e)(1) "may only be imposed [on] a finding of prejudice to the moving party[.]" *Lokai Holdings*, 2018 WL 1512055, at *7. Moreover, the moving party must come forward with "plausible, concrete suggestions" as to what the missing evidence might have demonstrated. *Moody v. CXS Transp. Inc*, 271 F.Supp.3d at 432.

31. Additionally, "because of the harshness of the sanction of preclusion, such a sanction has been held to be justified only in 'rare situations' evincing culpable conduct by the party against whom the sanction is to be imposed." *Scantibodies Lab., Inc. v. Church & Dwight Co.,* No. 14-CV-02275 (JGK) (DF), 2016 WL 11271874, at *33 (S.D.N.Y. Nov. 4, 2016), *report and recommendation adopted*, 2017 WL 605303 (S.D.N.Y. Feb. 15, 2017. Therefore, "before precluding a party from introducing relevant evidence because of a discovery violation, a court should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Id.* The Court must select sanctions that are commensurate with the non-compliance such that they restore the prejudiced party, as nearly as possible, to the position it would have occupied had the discovery been produced and the evidence disclosed." *Id*[7] and *Shanghai Weiyi Int'l Trade Co.*, No. 15-CV-

---

[7] See also, "A court must consider the extent to which the prevailing party has been prejudiced by the defaulting party's noncompliance and must ensure that any sanction imposed is just and commensurate with the failure to comply." *In re Doria/Memon Disc. Stores Wage & Hour Litig., No. 14-CV-07990*, 2018 WL 1353261, at *2 (S.D.N.Y. Mar. 15, 2018).

03533 (CM) (BCM), 2017 WL 2840279, at *16 (S.D.N.Y. Jun. 27, 2017) ("Discovery sanctions must be specifically related to the claims at issue in the order that was disobeyed."). Further, the intent standard for imposing the "particularly harsh" sanctions under Rule 37(e)(2), "is both stringent and specific" *Doubleline Cap.*, 2021 WL 1191527, at *8. It contemplates "the intent to actually deprive another party of evidence." *Lokai Holdings*, 2018 WL 1512055, at *8 (quoting Fed.R.Civ.P. 37(e) adv. comm. n. to 2015 amend.) Finally, it is the "well-settled preference in this Circuit for courts to resolve litigation disputes on their merits rather than through discovery sanctions." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 120 (S.D.N.Y. 2018), citing, inter alia, *Black v. Bowes,* No. 05-CV-00108 (GEL), 2006 WL 3771097, at *7 (S.D.N.Y. Dec. 21, 2006) ("[I]t is always preferable for issues to be adjudicated on the merits, rather than pursuant to discovery sanctions."

32. The Plaintiff has set out several factors relevant to determining whether preclusion of my rights is appropriate: (1) the party's explanation for the failure to comply with the discovery requirement; (2) the importance of the precluded evidence; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; (4) the possibility of a continuance or lesser sanctions, and (5) warning of the consequences of non-compliance (Motion, p. 11).

33. At the outset of this discussion, I would remind the Court that I am a pro se litigant, a fact that distinguishes this case from all those cited by the Plaintiff in its Motion.

34. With respect to factor 1, the United States ratified the Hague Convention and that the parties in this case agreed to proceed in accordance with Chapter I of the Convention in October 2021. Had the Plaintiff proceeded as agreed I could have participated in the deposition without breaching US, French or European Laws, and certainly the deposition would have taken place in the 16 months since the agreement was reached (Lenoir Declaration, Exhibit B). Indeed, it was the Government's

12

own estimate that, at the outside, discovery would be completed within a year if pursued in accordance with Chapter I of the Convention.[8] Instead, the Plaintiff misled the Court into concluding that the Hague Convention would not apply in this case, thus putting me into legal jeopardy under French penal law and European civil law, when a viable alternative was available.

35. Also notable is that the Plaintiff has never argued that my deposition was necessary to its case. On the contrary, both the Plaintiff and the Court told me that the deposition was a pro forma requirement. And, as set out in a status conference, I had no additional information to provide in a deposition as my accountant was deceased and he was wholly responsible for the relevant information collection and filings (Exhibit E, p. 18, lines 22-25 and p. 19, lines 2-16). Indeed, all the relevant information was provided to me by the Plaintiff. In sum, on the issue of failure to comply, it is my view that: i) the Plaintiff's original agreement to proceed in accordance with Chapter I of the Hague Convention; ii) its subsequent and deliberate misdirection about the nature of the case together with the consequences of that misdirection; iii) the legal jeopardy resulting from the Plaintiff's switch and bait, iv) my attorney's advice against compliance; and v) the non-materiality of any information that might have arisen in a deposition, taken together, constitute good cause for failing to comply with the discovery requirement.

36. With respect to factor 2, I am not introducing any new evidence; the evidence has long been available to the Plaintiff, and thus there is no evidence to preclude. However, precluding the affirmative defenses raised in this Cross-Motion would essentially constitute a default judgement in favor of the Plaintiff, "a 'drastic remedy' generally to be used only when the district judge has considered lesser alternatives." *S. New England Tel. Co. v. Glob. NAPs Inc*., 624 F.3d 123, 144 (2d Cir. 2010), and

---

[8] In considering the discovery deadlines, the Plaintiff indicated that proceeding pursuant to the Convention would take no more than 12 months.

one that would be inconsistent with the Court's preference for adjudicating issues on the merits, rather than pursuant to discovery sanctions and the case law cited above.

37. With respect to factor 3, the Plaintiff has not suggested that it has suffered any prejudice from the absence of the deposition.

38. With respect to factors 4 and 5, the Court first warned that the consequence of non-compliance would be that information that I might have introduced in a deposition could be barred (Exhibit E, transcript, p. 18, lines 8-10). The Plaintiff also raised this sanction (Exhibit F, transcript p. 5, lines 13-16). The Court then *sua sponte* suggested in its Order that it could bar the assertion of affirmative defenses (Order, p. 16). On this basis, the Plaintiff recommended this more grievous sanction in its Motion.

39. In upholding serious sanctions against the appellant in *S. New England Tel.*(ibid), the 2nd Circuit observed that the appellant had "willfully lied" about the existence of certain documents, that its "conduct was not isolated but rather formed a pattern of "prolonged and vexatious obstruction of discovery with respect to . . . *highly relevant records*. . . .", and that the district court was justified in concluding that lesser sanctions would be ineffective to achieve compliance, as the applicant had already been sanctioned for a failure to comply (*ibid*., emphasis added). This case is distinguishable in every respect. Additionally, the Court has previously observed the US Government's non-compliance with Court Orders but never imposed any form of sanction on it.

40. In conclusion on the issue of preclusion, given the circumstances in this case, no sanctions should be imposed, and in any case, preclusion of affirmative defenses would be "unduly harsh."

*The Plaintiff's non-compliance*

41. In its Order, the Court observed that despite an October 2021 agreement between the parties to proceed in accordance with Chapter I of the Hague Convention (Dkt. No. 67), and a subsequent Court Order to this effect (Dkt. No. 68), in July 2022 that "Plaintiff had not taken any steps to comply

with the Hague Convention at the time of the Conference…(and) [a]s a consequence, Plaintiff was (again) ordered to satisfy their obligations under the Hague Convention in order to take Defendant's deposition." (Dkt. No. 126, p. 4). The Government of the United States has adduced no evidence that it complied with this order and yet no sanctions were ever imposed on the Plaintiff despite the fact that it has never provided any good cause for its failure to abide by the 2021 agreement and the Court's subsequent Orders. Nonetheless, the Court has not threatened or imposed any sanctions of the Plaintiff, although it is my understanding that in a tripartite system, courts are to act as checks on the executive branch of government.

**Relief Sought**

- Relief pursuant to FRCP 15 and 60;
- Denial of the Plaintiff's request for preclusion of affirmative defenses;
- Denial of the Plaintiff's Motion for Summary Judgement;
- Any other relief, the Court deems appropriate.

_____

Carolyn Buff

Sworn before me, 27-02-2023